**IN THE IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | | |
|---|---|---|---|
| 1. | ANTONY LIEBECK, | ) | |
| | | ) | |
| | Plaintiff, | ) | CIV-22-153-PRW |
| | | ) | |
| v. | | ) | |
| | | ) | |
| 1. | AMERICAN PHOENIX, INC., | ) | |
| | | ) | |
| | Defendant. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY WITH AUTHORITY**

The Plaintiff, Antony Liebeck, moves to compel Defendant to supplement its discovery responses.  In support, Plaintiff shows as follows:

1.      The Plaintiff's claims include wrongful termination based on disability and in retaliation after Plaintiff requested accommodations and FMLA-protected leave.

2.      Plaintiff issued discovery to defendant for information relevant to Plaintiff's prima facie cases and pretext.

3.      Defendant has declined to produce certain information and the parties engaged in a good faith Rule 37.1 conference on November 14, 2022. Unfortunately, many of the issues discussed were not resolved.

4.      In another attempt to obtain supplementation without involving the Court, the Plaintiff drafted a motion to compel and provided such motion to Defendant.  Ex 1 (Hurst Nov. 15 Email).  Plaintiff asked Defendant to review the motion, reconsider its objections and advise Plaintiff if any representations made in the motion to compel did not accurately reflect Defendant's position on supplementation.  *Id*. Defendant did not respond and has not supplemented.

1

## ARGUMENT AND AUTHORITY

### I – RELEVANT BACKGROUND

In February 2020 the Plaintiff began working for Defendant as a truck driver. Around January 29, 2021, Plaintiff suffered a traumatic experience which caused him to spiral into a severely anxious and depressed state.

Plaintiff reported his medical condition to Defendant and asked for the accommodation of taking off work from February 1, 2021, until March 1, 2021. Plaintiff would have been entitled to FMLA-leave beginning around March 14, 2021.

Defendant did not grant Plaintiff's request. Defendant involuntarily terminated Plaintiff's employment on February 23, 2021.

Defendant claims Plaintiff was terminated for poor attendance. Defendant claims the persons who made the termination decision are Brian Harrington (Director of Pre-Weigh) and Rocky Daniels (Plant Manager).

### II – SCOPE OF DISCOVERY

Fed.R.Civ.P. 26 authorizes a party to discover:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Thus, "[w]hen requested discovery appears relevant, the party objecting to production has the burden of establishing the lack of relevance by demonstrating that the request falls outside the scope set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor

2

of broad disclosure." *Shotts v. Geico Gen. Ins. Co*., No. CIV-16-1266-R, 2017 U.S. Dist. LEXIS 171515, at \*2 (W.D. Okla. Oct. 17, 2017). "Objections to discovery requests must be stated with specificity; mere boilerplate objections or the familiar litany of 'overly broad, vague or burdensome,' without more, is not sufficient." *Id*.

### III – DISCOVERY REQUESTS AT ISSUE

### A – Req. Adm. Nos. 14-17 (Information about Plaintiff's Replacement)

Plaintiff asked Defendant to admit or deny whether the person(s) who replaced Plaintiff were in the same protected category or engaged in the same protected conduct as Plaintiff.  The specific requests, and Defendant's responses thereto, are set out below:

> **REQUESTED ADMISSION NO. 14:** Admit that following his termination some of the job duties formerly performed by the Plaintiff were assigned to employees who had not reported having anxiety and depression.
> **REQUESTED ADMISSION NO. 15:** Admit that following his termination some of the job duties formerly performed by the Plaintiff were assigned to employees who had not requested an accommodation for a medical condition.
> **REQUESTED ADMISSION NO. 16:** Admit that following his termination some of the job duties formerly performed by the Plaintiff were assigned to employees who had not requested time off work for a medical condition.
> **REQUESTED ADMISSION NO. 17:** Admit that following his termination some of the job duties formerly performed by the Plaintiff were assigned to employees who had not requested FMLA protected leave.

Ex 2 (Defendant's Responses and Objections to Plaintiff's Opening Discovery) at p. 5-6.

Defendant claims it "lacks sufficient knowledge or information to admit or deny" each request.  *Id*.

Notably, Defendant was able to admit or deny that *Plaintiff* reported his medical condition or made protected requests.  *Id*., Def's Resp RFA Nos. 3-4 (denying Plaintiff reported anxiety or depression), 5 (denying Plaintiff requested time off work for medical treatment).  It would be an unusual – and doubtful – coincidence that Defendant has enough

information to admit or deny the exact same Req. Admissions related to Plaintiff but not

to anyone who replaced him.  Defendant knows and disclosed the persons who replaced

the Plaintiff.  *Id*., Def's Resp. No. 5 (Identifying Andre Facen, Randy Jackson, Jorion

Rouege, Charles Maiello and David Cox as Plaintiff's replacements).  Defendant would

know whether it claims that these individuals engaged in conduct sought by RFAs 14-17.

Thus, Defendant should supplement its responses to Req. Adm. Nos. 14-17.

### B – Potential Witnesses (Int. No. 4)

Int. No. 4 seeks information about potential witnesses:

> **INTERROGATORY NO. 4:** Identify (defined as full name, last known home
> address, last known home or cell phone number, work address, date of birth,
> dates of employment and job title) each person who, during any part of the
> period beginning two years prior to the Plaintiff's termination to the present,
> supervised (directly and/or indirectly) by:
> A.      the person(s) who made the final decision to terminate the Plaintiff;
> * * *

*Id*., p. 8.[1]

First, the request is geographically limited to persons who worked in the regions

supervised by the decisionmakers.  It is well established that the geographic scope for

discovery encompasses the geographic areas supervised by the decisionmakers.  See

*Sampson v. Integra Telecom Holdings, Inc*., 461 Fed. Appx. 670, 673 (10th Cir. 2012)

(footnotes omitted):

> Although Dwayne Lazarre was Mr. Sampson's immediate supervisor at the time
> he was placed on the Final PIP, Mr. Arambula, the Vice President of Sales,
> enacted the Final PIP and delivered it to Mr. Sampson. Mr. Arambula also
> participated in the decision to terminate Mr. Sampson. Because of Mr.
> Arambula's role in disciplining Mr. Sampson, we consider all sales
> representatives overseen by Mr. Arambula to determine whether any were
> similarly situated to Mr. Sampson.

---

[1] Plaintiff omitted the portions of Int. No. 4 not at issue in this motion.

*See also Bryant v. Farmers Ins. Co., Inc.*, 2002 U.S. Dist. LEXIS 14344, *11-12 (D. Kan.

July 31, 2002):

> Plaintiff claims that her supervisor, John Honore, merely recommended her discharge and his recommendation required the approval by his managers, Phil Huyser and Joe Petrangelo. Defendant disagrees arguing that Mr. Honore was the true decision-maker and he only consulted with the human resources and legal departments prior to terminating Plaintiff's employment. Given the broad scope of discovery and the fact that an issue to whether John Honore was the true decision-maker exists, discovery pertaining to other claims departments subjected to the same audit standards as those applied to the RPI department should not be narrowly circumscribed to only those claims departments supervised by John Honore.

Defendant claims Robert Harrington and Rockey Daniels made the termination decision.  Witnesses who worked in regions Mr. Harrington and/or Mr. Daniels supervised will generally know the work conditions imposed, the personalities (and biases) of persons involved in the disputed conduct, whether conduct similar to that attributed to the Plaintiff was committed by others, how similar acts by others were treated by the decisionmakers, and how the decisionmakers treated others who complained of harassment.  Such persons may have second-hand knowledge of the reasons and motives for the employment action which second-hand information may be admissible under exceptions to the hearsay rule, may point to persons having first-hand knowledge, and may assist in examining actors and persons having first-hand knowledge.  In other words, the witnesses may have information which is either relevant in itself or reasonably calculated to lead to the discovery of admissible evidence.

These are reasons routinely recognized as justifying the discovery of others. *See Strickland v. UPS*, 555 F.3d 1224, 1231 n. 6 (10th Cir. 2009) (recognizing relevancy of co-worker opinion as to different treatment); *Reeves v. Sanderson Plumbing Prods, Inc.*, 530

U.S. 133, 151 (2000) (JMOL not appropriate in part because of co-worker opinions on treatment of plaintiff and attitude of supervisor); *Abuan v. Level 3 Communs., Inc.*, 353 F.3d 1158, 1173-1174 (10th Cir. 2003); *Minshall v. McGraw Hill Broadcasting Co., Inc.* 323 F.3d 1273, 1280 (10th Cir. 2003); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 695, 696 (D.Kan.2000) (compelling identification of all co-workers at the same store because "Plaintiffs could use the requested information to contact employees regarding Denny's treatment of other customers and any other similar incidents or customer complaints. The requested information might also yield information about employees terminated for engaging in discrimination. . ."), *inter alia*; See *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006) (Discovery allowed for an entire region because "Plaintiffs also allege they all worked under the same Regional Vice-President" and such vice-president was involved in the decision).

During the Rule 37.1 conference Plaintiff offered to further limit the geographical scope to Plaintiff's work location, even though he understands Mr. Harrington supervises multiple locations. Defendant declined Plaintiff's offer.

Second, the request is temporally limited to two years prior to Plaintiff's termination to the present. Plaintiff was terminated in February 2021. Accordingly, the request seeks information from February 2019 until August 4, 2022 (the day Plaintiff issued the discovery request). Ex 3 (Plf's Open Disc, Caption and Cert. of Service). Courts in this Circuit routinely find that a reasonable period both before and after the incidents in question constitute a reasonable temporal limitation on discovery. See, e.g., *Chicano Police Officer's Ass'n v. Stover*, 526 F.2d 431, 438-39 & n. 6 (10th Cir.1975) (compiling cases indicating a five-year period was generally reasonable and proper) and *McAlester v.*

*United Air Lines, Inc.*, 851 F.2d 1249, 1257 (10th Cir.1988) (admission of terminations "for the years 1977 through 1981" relevant).  *Also see EEOC v. Kansas City Southern Ry.,* 195 F.R.D. 678, 680 (D.Kan.2000); *Garrett v. Sprint PCS*, 2002 U.S. Dist. LEXIS 1914, *8 (D. Kan. Jan. 31, 2002); *Hill v. Dillard's Inc.*, 2002 U.S. Dist. LEXIS 950, * 13 (D. Kan. Jan. 21, 2002); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004) (all citing to *Stevenson v. Gen. Elec. Co.,* 1978 WL 150 at * 1 as "noting emergence of a 'five year rule'").

Thus, Defendant should be compelled to fully respond to Int. No. 4.

### C – Contact Information

Defendant refuses to produce contact information for anyone.  Ex 2 at p. 7-8 (Def's Resp Int. Nos. 2-3) and p. 9 (Int. No. 5).  It is well settled that contact information is discoverable and must be produced.  Indeed, Fed.R.Civ.P. 26(a)(1) requires automatic disclosure of "the address and telephone number of each individual likely to have discoverable information".  Thus, information related to addresses and phone numbers is routinely discoverable and is not privileged. *See FDIC v. St. Paul & Marine Ins. Co.,* 53 F.R.D. 260, 262 (W.D.Okla.1971) ("names and addresses of persons having information concerning the case. . . are not privileged").  Nor is such information "private" as phone numbers and addresses are commonly listed in public directories.[1]  Even unlisted phone

---

[1] This does not mean that Plaintiff should be required to look up those addresses and phone numbers because Plaintiff does not know where the employees reside, nor can Plaintiff readily distinguish between different persons have the same or similar names.  Defendant employer, on the other hand, has the precise information in its own files and is required to disclose the same under Rule 26(a)(1), Fed.R.Civ.P.

numbers are discoverable because privacy concerns will not serve as a bar to discovery.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984):

> The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach.  Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action.  Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties.

Further, the parties entered into a protective order on August 3, 2022, which addresses privacy concerns related to unlisted phone numbers and addresses.  Dkt. 19, ¶1(G).  *Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 696 (D. Kan. 2007)(protective order resolves privacy objections); also *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 196 (D.Kan.1996):

> . . .That an interrogatory may invade the privacy rights of present or former employees of a party does not of itself make the interrogatory objectionable.  Upon a proper showing of such invasion of privacy, the court can enter an appropriate protective order.

Thus, Defendant should be compelled to produce the contact information of identified witnesses.

### D – Protected Actions by Other Employees (Req. Prod. Nos. 4-5)

Plaintiff seeks information about others who believed they were discriminated against in the same manner as Plaintiff, and Defendant's responses to such complaints of discrimination:

> **REQ. PROD. NO. 4:** For any complaints of disability discrimination and/or retaliation made by the any employee of the Defendant working in the same facility as the Plaintiff, produce documents (including emails, memos, notes, etc.) showing:
> A.      All complaints of discrimination and/or retaliation made;
> B.      The dates such complaints were made;
> C.      The persons whom the complaints were against;

D.      All investigations made into such complaints;

E.      All persons interviewed as part of such investigations (including all notes or other documents showing the questions asked by interviewers and responses provided by interviewees);

F.      The outcome of such investigations; and

G.      Any action taken in response to complaints and/or the information learned through such investigations.

This request is temporally limited to the period of January 1, 2017 to the present.

**REQ. PROD. NO. 5:** Produce:

A.      Copies of any charges of harassment, discrimination or retaliation filed against you with the EEOC, OHRC, DOL, DOJ, Department of Education or any federal, state or local agency from three years prior to Plaintiffs' termination to the present;

B.      Your responses to such charges together with any documents or attachments to such charges;

C.      Any lawsuits, tort claims, demand letters or demands for arbitration directed to you and asserting wrongful discharge, retaliation, discrimination or harassment in violation of any state or federal law or in violation of public policy;

D.      The answers or responses you filed to any such lawsuit, tort claim, demand letter or demand for arbitration.

     This request is limited to charges/claims materially related to disability discrimination and/or retaliation.

Ex 2, p. 11-13. During the Rule 37.1 conference Plaintiff offered to further limit the geographical scope to Plaintiff's work location (which is supervised by decisionmaker Rocky Daniels, Plant Manager), and to the period from February 2019 through February 2022. Defendant declined.

Discrimination charges levied against the Defendant are relevant to uncovering a pattern of race discrimination. ***See Rodger v. Electronic Data Systems, Corp.,*** 155 F.R.D. 537, 541 (E.D.N.C. 1994) ("[I]n an employment discrimination context, information regarding prior discrimination suits against the defendant would be highly relevant to evaluate the defendant's employment practices as a whole and provide evidence regarding

intent and willfulness."); ***Jackson v. Montgomery Ward & Co.,*** 173 F.R.D. 524, 527 (D.Nev.1997) ("[D]iscovery of prior complaints of discrimination is permitted in order to prove that the reasons articulated for an adverse employment action are a pretext for discrimination."); ***Hayes v. Compass Group USA, Inc.,*** 202 F.R.D. 363, 366 (D.Conn.2001) (compelling production of "judicial and administrative complaints" and "internal EEO-related claims"); ***Coker v. Duke & Company, Inc.,*** 177 F.R.D. 682, 686 (M.D.Ala.1998) ("The plaintiffs. . . seek lawsuits. . . against [Defendant].  As a threshold matter, the information which the plaintiffs seek is routinely produced.  Courts, in a variety of contexts, have affirmed the right of litigants to be informed about lawsuits and complaints filed by their adversaries.") (Limiting discovery to similar kinds of suits and for a five-year period).

Although relevancy is much broader than admissibility, evidence of other lawsuits of similar discrimination has been admitted into evidence at trial. ***See Phillip v. ANR Freight Systems, Inc.,*** 945 F.2d 1054, 1056 (8th Cir.1991):

> At trial, Phillip made several offers of proof [as to] other age discrimination lawsuits filed against ANR.  The district court found that Phillip had failed to show that these cases were sufficiently similar to his own case and therefore the evidence was excluded on the grounds that it was irrelevant and unduly prejudicial. . .  * * *
> [T]he admission of such `background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive.' ***Estes [v. Dick Smith Ford, Inc.],*** 856 F.2d [1097] at 1103 [(8th Cir.1988)].  Accordingly, we reverse the decision of the district court to exclude this evidence and remand the case for a new trial.

Further, such information is relevant to Defendant's "good faith" defense.  Answer, Dkt. 7, ¶21 (alleging "Defendant made good-faith efforts to comply with the Americans with Disabilities Act . . . .").  Part of Defendant's burden in proving the good-faith defense

is that it enforced its anti-discrimination policies and adequately responded to allegations

of discrimination.  See, e.g., *Dunsworth v. Nat'l Oilwell Varco, L.P.*, No. CIV-17-895-D,

2019 U.S. Dist. LEXIS 87588, at *16 (W.D. Okla. May 24, 2019):

> Under *Kolstad*, "at a minimum, an employer must at least adopt anti-discrimination policies and make a good faith effort to educate its employees about these policies and [the statute's] prohibitions." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1209 (10th Cir. 2002); *see McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1138 (10th Cir. 2006) ("To avail itself of Kolstad's good-faith-compliance standard, an employer must at least 1) adopt antidiscrimination policies; 2) make a good faith effort to educate its employees about these policies and the statutory prohibitions; and 3) make good faith efforts to enforce an antidiscrimination policy."). In this case, the existing record contains no facts to show whether Defendant made any effort to educate Folmar about the ADA before he committed the alleged violation. Therefore, the Court finds that the availability of punitive damages cannot be decided at this       time       as       a       matter       of       law.

Thus, Defendant should be compelled to supplement its responses to Req. Prod.

Nos. 4-5.

### E – Personnel Documents (Req. Prod. No. 8)

Req. Prod. No. 8 seeks relevant personnel documents (not entire personnel files) of

persons who may be similarly situated to the Plaintiff:

> **REQ. PROD. NO. 8:** Produce the "personnel documents" for the following
> persons:
> A.   Each person who replaced the Plaintiff and/or assumed any part of the Plaintiff's job duties as a result of Plaintiff's termination.
> B.   All persons who, during any period between January 1, 2018 and the present, occupied the same and/or similar position as the Plaintiff and/or performed the same and/or similar job duties as the Plaintiff (limited to persons directly and/or indirectly supervised by the person(s) who participated in the final decision to terminate the Plaintiff;[sic]

Ex 2, p. 14. Plaintiff defined "personnel documents" as *limited to* relevant information such as contact information, similar protected characteristics and/or protected conduct as Plaintiff, and performance/disciplinary records.  Ex 3, p. 16, fn1 (Plf's RFP No. 8, defining "personnel documents".

The request, as written, is temporally and geographically reasonable for the reasons discussed supra, p. 7.  However, during the conference, Plaintiff offered to further limit the request to the period of Feb. 2019 to February 2022.  Defendant declined.

The discovery in question goes to disparate application of the Defendant's disciplinary policy, i.e. pretext, which is at the heart of the litigation.  Such information is not merely relevant, it is essential.  "'Comparative information,' as EEOC states, 'is absolutely essential to a determination of discrimination.'"  *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir., 1994).  "[S]howing disparate treatment—by demonstrating that the employer treated employees similarly situated to the plaintiff employee differently (i.e., more favorably)—is a particularly potent instrument to discredit an employer's allegedly legitimate reasons."  *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017).  *See Dickman v. Lahood*, 600 F. App'x 611, 614 (10th Cir. 2015)

> Although [comparator] evidence is not required, it has been considered a strong indication of pretext in other cases. *See Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 547 (10th Cir. 2014) (explaining that in a *McDonnell Douglas* analysis, even a legitimate reason for a decision may be deemed pretextual if similarly situated employees were treated differently).

Plaintiff's request is for other applications[5] of the same policy, which is the standard for such discovery. "[V]iolations. . . of comparable seriousness" are not only discoverable, but admissible." *English v. Colo. Dept. Of Corr.,* 248 F.3d 1002, 1011 (10ᵗʰ Cir.2001) ("When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; however, the violations must be of comparable seriousness."); *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir.1992) ("The infractions giving rise to the comparison need not involve exactly the same offenses; they need only be of comparable seriousness."), inter alia.

Because the discovery in question goes to pretext, it represents an essential discovery area. "[T]he entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 271 (1989) (O'Connor, J., concurring). Thus, a Plaintiff "*must* be given a full and fair opportunity to demonstrate" pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973) (emphasis supplied). *Accord St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993) ("[The plaintiff]. . . *must* have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." Quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (bracket insertion by the Court)) and *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10ᵗʰ Cir. 1995) ("In opposing summary judgment a plaintiff *must* be given an opportunity

---

[5] Plaintiff is not asking for other terminations, but for any application of the policy. The issue is whether other persons were *not* terminated in similar circumstances.

to show by competent evidence that the presumably valid reasons for the [action] were really a pretext for a discriminatory decision.") (Emphasis supplied, both).

As to Defendant's privacy objection, the protective order entered in this case specifically protects private information such as performance and disciplinary records. Dkt. 19, ¶1. The protective order was negotiated by both parties for the purpose of resolving privacy objections. *Id.*, ¶15 ("Each party retains the right to make substantive objections to discovery requests *other than those based on privacy or confidentiality*."(emphasis added). Further, "under federal law, there is no privilege for personnel files." *Horizon of Hope Ministry v. Clark County, Ohio*, 115 F.R.D. 1, 5 (S.D.Ohio 1986). *Accord Spell v. McDaniel*, 591 F.Supp. 1090, 1119 (E.D.N.C.1984).

Although the trial court is granted substantial discretion in controlling discovery, the denial of pretext discovery is one of the relatively few areas where refusal can give rise to reversible error. *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980) (Plaintiff "had a right to the [pretext] information and denial of discovery amounted to an abuse of discretion by the trial court.") and *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975) (Reversing judgment for denial of discovery "relevant to an attempt by the plaintiffs to show that the business necessity was pretextual.")

Thus, Defendant must fully supplement its response to Req. Prod. No. 8.

**E – Documents Supporting Defendant's Affirmative Defenses (Req. Prod. No. 12)**

Defendant asserted twenty-two separate defenses, at least thirteen of which are affirmative defenses for which Defendant bears the burden of proof. Dkt. 7 (Answer). Plaintiff seeks the documents Defendant intends to use in support of its affirmative defenses. Ex 2, p. 16-17 (Def's Resp to Req. Prod. No. 12). Defendant refuses to answer,

claiming the request, RFP 12, "fails to 'describe with reasonable particularity' the item or category of items to be produced". *Id*. p. 17.Ex 1, p. 17, citing to Fed.R.Civ.P.34(b)(1)(A). Defendant claimed during the Rule 37.1 conference that Plaintiff is required to specifically identify which documents it wants produced.  Plaintiff explained that it does not know which documents Defendant intended to use to support the defenses Defendant asserted. At that time, Defendant explained that because Plaintiff cannot specifically identify (apparently by reading Defendant's mind) the documents Defendant intends to rely on, then it cannot draft a discovery request that describes "with reasonable particularity" the items or category of items sought.  According to Defendant, then, it need not respond to the request.   Defendant's objection is frivolous and perilously close to violating Fed.R.Civ.P. 26(g)(1)(B)(". . . every discovery . . . objection must be signed by at least one attorney of record . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a discovery . . . objection, it is . . . consistent with these rules and warranted by existing law . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . .").   At the time Defendant asserted the affirmative defenses it was required to have evidentiary support for the affirmative defenses pled.  Fed.R.Civ.P.11(b)(2)-(3).  Defendant – not Plaintiff – knows which documents *Defendant* intends to assert in support of its own defenses.  This is not a case where RFP 12 generically asks for all documents related to all defenses.  To the contrary.   RFP 12 separately identifies each affirmative defense to which it asks for supporting documentation.   Ex 2, p. 16-17 (separately identifying each affirmative defense). Multiple courts in this Circuit have approved of similar requests.  See, e.g.,

15

*Scheller v. Williams Cos.*, No. CIV-17-632-M, 2018 U.S. Dist. LEXIS 96880, at *11 (W.D. Okla. June 1, 2018)("the Court orders that defendants produce, in addition to the documents they have already produced, any documents that are materially related, not just in support of, defendants' affirmative defenses"); *Reed v. Tetra Tech, Inc.*, No. CIV-13-542-M, 2014 U.S. Dist. LEXIS 3549, at *7 (W.D. Okla. Jan. 13, 2014)(compelling interrogatory response seeking all details "materially related" to defendant's denial"), *Walters v. Dollar Gen. Corp.*, No. 19-CV-1010-EFM, 2019 U.S. Dist. LEXIS 140759, at *7-8 (D. Kan. Aug. 20, 2019)(Compelling production of documents defendant contends supports its denials and affirmative defenses); *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Bottling Grp., L.L.C.*, No. 07-2315-JAR, 2008 U.S. Dist. LEXIS 6235, at *3-5 (D. Kan. Jan. 28, 2008)(same), *inter alia.*

Thus, Defendant should be compelled to fully respond to Req. Prod. No. 12.

**WHEREFORE**, Defendant should be compelled to supplement its responses as discussed above and the Court should award fees and costs incurred in having to bring this motion.

**RESPECTFULLY SUBMITTED THIS 13th DAY OF DECEMBER 2022**.

HAMMONS, HURST & ASSOCIATES

s/ Amber L. Hurst
Amber L. Hurst OBA No. 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
amber@hammonslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 13th[th] day of DECEMBER 2022.

Robert A. Bragalone, OBA #31898
Jason E. Winford
2200 Ross Ave., Suite 3700
Dallas, TX 75201
Phone: (214) 231-4714 Direct Dial (Mr. Bragalone)
        (214) 231-4760
Fax: (214) 461-4053
EMAIL:      BBragalone@grsm.com
            jwinford@grsm.com

Calvert R. McMahon, OBA #32069
101 Park Avenue, Suite 1300
Oklahoma City, OK 73102
Phone: (918) 693-1442 (Direct Dial)
EMAIL: CMcMahon@grsm.com
*Counsel for Defendant*

Jason E. Winford
Gordon Rees Scully Mansukhani, LLP
2200 Ross Avenue, Suite 3700
Dallas, TX 75201
(214) 231-4760
*jwinford@grsm.com*

                              s/ Amber L. Hurst